IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN A. ATHERTON,

    Plaintiff,

vs.

    Case No. 06-1303-JTM

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

MEMORANDUM AND ORDER

    Plaintiff Steven Atherton has applied for Social Security disability benefits. His application was denied by the ALJ on December 30, 2005, a decision affirmed by the Appeals Council on August 10, 2006. There are three allegations of error by Atherton. First, the ALJ erred in failing to develop the record. Second, that the ALJ erred in failing to consider the effects of his depressive disorder. And third, that the ALJ erred in failing to make specific findings as to the mental demands of Atherton's past work.

    Plaintiff-claimant Atherton has stated that he became disabled beginning August 20, 2003. He has a high school education, and has twenty-three years of experience working as a school custodian. He has not worked since August of 2003, after he verbally assaulted a supervisor. He seeks disability based on paranoid mental illness. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 23-30), and the brief of

Atherton (Dkt. No. 11, at 2-6), and set forth seriatim in the argument section of the Commissioner's response (Dkt. No. 13, at 4-11).

The ALJ concluded that Atherton suffered from "recurrent major depression with psychotic ideations and schizoid personality disorder," but that the impairment while severe did not meet any listed impairment. (Tr. 23). The ALJ determined that Atherton had not documented any other mental illnesses, including "delusions, psychotic symptoms, seriously constricted interests or mood disorder symptoms or personality disorder traits." (Tr. 26-27).

The ALJ noted that Atherton's symptoms were "readily controlled with the commencement of medication and therapy," and the workplace incidents involving conflict with supervisors occurred when Atherton had stopped his medications. (Tr. 23). The ALJ noted that Atherton engaged in significant daily activities, including "cleaning house, laundry, cooking meals, grocery shopping, and driving a car." (Tr. 25.) In addition, Atherton lives by himself and "leaves his house each day for approximately three hours, including walking in the morning at the mall and regular gym workouts each afternoon." (Id.) Although at the hearing Atherton cited the price and side-effect (drowsiness) of his medication, the ALJ noted that Atherton never mentioned any of these issues to his treating medical sources, even when he otherwise informed them of his ceasing to take the medication. The ALJ found that Atherton was moderately limited in his ability to respond to supervisors and co-workers, and retained the residual functional capacity (RFC) to perform all work except that "requiring more than routine interpersonal contact that is incidental to performance of the job tasks." (Tr. 28). Generally, the ALJ stressed that Atherton

> last saw his treatment sources in late September 2003, and did not continue medication or therapy. Further, the claimant has not attended the clinic ... to seek continued care of his mental symptoms. In addition, there is no other medical

> evidence of other treatment for any reason. Finally, in addition to his treating psychiatrist, the only other contact that claimant has with an acceptable medical source is for his consultative examination with a psychologist. Although his attorney argued at hearing that a Consultative Examination should be requested, the undersigned was not convinced that it would accomplish anything even if he attended, as Mr. Atherton refuses to take his medications. Dr. Liebenau, a licensed psychologist, identifies no new mental disorder not otherwise more specifically delineated in the diagnosis and treatment notes of Dr. Wadul.

(Tr 23) (Internal references omitted).

Atherton's first claim of error is that the ALJ failed to adequately develop the record by failing to consider his low intelligence, and should have required IQ testing. The court finds no error in light of the evidence in the record. Further consultative examination is required when there is objective evidence of an impairment. *Diaz v. Secretary of HHS*, 898 F.2d 774, 778 (10th Cir. 1990). Here that evidence is absent. Atherton points to the statement of Dr. Wadul as indicating the existence of low intelligence. In this source Atherton is merely described as generally "a person with low average intelligence." (Tr. 159). There is absolutely no indication in the record that Dr. Wadul or any other medical source ever considered Atherton's intelligence to be an actual or even a potential impairment. The medical sources instead were in agreement — that Atherton's impairment was not low intelligence but his paranoid/schizophrenic mental disorder, *and* that such disorder was successfully controlled when Atherton took his medication. Given the state of the evidence, the ALJ did not err in failing to consider additional, hypothetical potential impairments.

Atherton contends that the ALJ should have considered the effect of his depressive disorder, and did not incorporate the suggested limitations of agency reviewing psychologist Laura Cohen, Ph.D. — that Atherton should work independently and in a position not requiring sustained attention — into the RFC. Although Cohen's recommendations should have been explicitly discussed, under

3

the circumstances of the case the court finds no reversible error, since the ALJ's opinion explicitly states that he reviewed all of the evidence and his ultimate opinion is not inconsistent with the consultant's opinion. *See Ridge v. Apfel*, 15 F.Supp.2d 1086, 1089 (D. Kan. 1998). According to Cohen, Atherton was moderately limited in his abilities to (a) "maintain attention and concentration for extended periods," (b) "interact appropriately with the general public," and (c) "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (Tr. 187-88). This is generally consistent with the RFC adopted by the ALJ. (Tr. 28-29).

Atherton argues that the ALJ should not have considered his failure to continue his treatment, since he was suffering from a mental impairment. However, this is not a case, as suggested by the claimant, where a person simply fails to recognize she suffers from a mental illness. In such cases, the failure to seek treatment should not be understood as indicating the absence of impairment. In the present case, however, Atherton was aware of his impairment, and not only could but did seek treatment for the condition. He knew of his condition and the need to take his medication. Given the evidence that Atherton had been presenting himself to medical sources, but while doing so never mentioned the later putative rationales for ceasing the medication (its cost, or a side effect of drowsiness), the court finds that the ALJ did not err in this failure to mention these concerns in his assessment of Atherton's credibility. Additionally, no medical source ever indicated that Atherton was unable to work and, as noted earlier, the ALJ noted that Atherton's claims of the degree of his impairment were contradicted by the extensive nature of his daily activities. The court finds that the ALJ's credibility assessment was not in error.

Finally, Atherton argues that the ALJ erred in failing to examine in detail the nature of his prior work, which he argues required "more than routine interpersonal communication." (Dkt. No.

11, at 15). The court finds no error. The ALJ concluded that Atherton's custodial work "involves low-level semi-skilled work that requires up to medium exertion as generally performed in the national economy and it requires only routine interpersonal contact as incidental to tasks performed." (Tr. 30). This is consistent with Atherton's own testimony. (Tr. 88-89).

Atherton's current argument otherwise is grounded solely on his gloss of the description of the job of janitor in the *Dictionary of Occupational Titles* (DOT), No. 382.664-010. However, nothing in the DOT description indicates that such interpersonal communications are indeed more than routine incidents of the job. Indeed, the DOT indicates that the speaking with people element of the job of janitor is "Not Significant." Further, some of the interpersonal contracts discussed in the DOT involve the requirements of apartment janitors rather than school custodians. *See* 382.664-010 ("Cautions tenants regarding complaints about excessive noise, disorderly conduct, or misuse of property"). Most importantly, the ALJ's interpretation of Atherton's job is entirely consistent with Atherton's own description of his prior, usual work, *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir. 1983) and thus no error is present.

IT IS ACCORDINGLY ORDERED this 27th day of December, 2007 that the present appeal is hereby denied.

                                               s/ J. Thomas Marten
                                               J. THOMAS MARTEN, JUDGE